# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEAN-MARC EICHNER, § § § | |
| *Plaintiff,* § | Civil Action No. 4:23–mc–00172 |
| § | Judge Mazzant |
| v. § | Underlying Case: |
| § | Civil Action No. 4:19-cv-00524 |
| OCWEN LOAN SERVICING LLC, § § | |
| *Defendant.* § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Samuel L. Boyd and Boyd & Associates' Motion to Quash, Motion for Protective Order, and Objections to Subpoena (Dkt. #1). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

On July 15, 2019, in the underlying case, Relators Jean-Marc Eichner ("Eichner") and Brandon Loyd ("Loyd") filed their Original Complaint under seal alleging that the Defendants presented false or fraudulent claims to the Government, made express and/or implied false certifications to the Government, made or used false records or statements material to false or fraudulent claims, fraudulent inducement, and reverse false claims under 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G) (4:19-CV-524, Dkt. #1 ¶¶ 221–28). More specifically, Relators allege that Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (collectively, the "Ocwen Defendants") violated the Federal Housing Administration, the Dodd-

Frank Act, the Real Estate Settlement Procedures Act, the Unfair, Deceptive, or Abusive Acts or Practice Laws, the Truth in Lending Act, Regulation Z, and Texas state law (4:19-CV-524, *see generally* Dkt. #1). Additionally, Relators accuse the remaining Defendants in this case of being vicariously liable for the actions of the Ocwen Defendants (4:19-CV-524, Dkt. #1 at ¶ 2).

On December 10, 2021, the Government opted to not intervene in the case (4:19-CV-524, Dkt. #6), and on December 14, 2021, the Court unsealed the case.

On May 4, 2023, counsel for the Ocwen Defendants issued a non-party subpoena (Dkt. #1, Exhibit 1) to Samuel L. Boyd and Boyd & Associates ("Boyd")—counsel for Relators—to produce various documents and information from two prior *qui tam* cases that involved the Ocwen Defendants: *United States ex. rel. Fisher v. Homeward Residential, Inc.*, 4:12–CV–461 (E.D. Tex. filed Jul. 25, 2012); and *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 4:12–CV–543 (E.D. Tex. filed Aug. 20, 2012) (collectively, "*Fisher*").[1] Specifically, the subpoena in question seeks production of the following:

1. Full copies of the pleadings at ECF #541, 543, 545, 546, 549, 550, 551, 553, 554, 555, 556, 558, 559, 561, 565, 567, 568, 582, 585, 587, 592, 602, 603–610, 623 in *Fisher* with exhibits, which were filed under seal and are not publicly available through the Court's website.

2. Full copies of the pleadings at ECF #339, 341, 343, 344, 348, 349, 352, 353, 354, 356, 357, 360, 365, 366, 381, 384, 366, 395–403, 415 in *Fisher-Homeward* with exhibits, which were filed under seal and are not publicly available through the Court's website.

3. Copies of the *Fisher* Relators' trial exhibits identified on the exhibit lists at ECF #439-3 in *Fisher*.

4. Copies of all deposition transcripts, with exhibits, for any witnesses who were not Ocwen employees that were taken in *Fisher* and *Fisher-Homeward*.

---

[1] In *Fisher*, Boyd served as counsel for multiple relators who alleged that the Ocwen Defendants had violated various federal, state, and local laws in the residential mortgage industry (4:12–CV–461, Dkt. #101; 4:12–CV–543, Dkt. #126). *Fisher* ultimately ended in settlement (4:12–CV–461, Dkt. #327; 4:12–CV–543, Dkt. #528).

5. Copies of all the *Fisher* Relators' expert reports, including any expert witness working files, from *Fisher* and *Fisher-Homeward*.

6. All pleadings, demands, and communications among *Fisher* Relators Counsel relating to their various lawsuits, arbitrations, and disputes regarding the amount and allocation of attorneys' fees among counsel in *Fisher*.

7. Copies of each document that was produced by one or more of the parties in *Fisher* and *Fisher-Homeward*, to the extent that you are still in possession of those documents.

8. All communications with Relators prior to the Retention Date.

9. Relators' Engagement Letters.

(Dkt. #1, Exhibit 1 at pp. 9–10).

In addition to issuing the subpoena to Boyd, the Ocwen Defendants served a subpoena on Fish & Richardson ("F&R")—counsel for a relator in *Fisher*—seeking production of some of the same documents to which Boyd has objected here (Dkt. #9 at p. 2). Boyd objected to seventeen documents sought by the F&R subpoena (Dkt. #9, Exhibit 1 at pp. 3-4, ¶ 12). However, F&R produced a substantial number of unobjected documents in response to the subpoena (Dkt. #9, Exhibit 1 at p. 4, ¶¶ 13–15). F&R produced 121 documents consisting of deposition transcripts and exhibits from some of the *Fisher* witnesses, the trial exhibits from the *Fisher* relators, and over two million pages of documents that Ocwen had produced in *Fisher* (Dkt. #9, Exhibit 1 at p. 4, ¶¶ 14–15). The Ocwen Defendants have since informed the Court that they are narrowing the scope of information sought by their subpoena on Boyd to not include documents and information already produced by F&R (*see* Dkt. #9 at p. 3).

The Ocwen Defendants further notified the Court that Boyd produced a significant number of documents in response to two subpoenas issued by the Office of Special Inspector General for

the Troubled Asset Relief Program ("SIGTARP") in 2017 after *Fisher* settled (Dkt. #9 at p. 4). Those subpoenas sought all the documents that any party, including the defendants, produced to Boyd in *Fisher* (Dkt. #9 at p. 4). On August 8, 2023, SIGTARP provided copies of the two subpoenas to the Ocwen Defendants but did not provide the actual documents produced by Boyd (Dkt. #9 at p. 4). Despite the Ocwen Defendants' request, Boyd has refused to produce the documents it gave SIGTARP to the Ocwen Defendants (Dkt. #8 at p. 6; Dkt. #9 at p. 4). The Department of Justice ("DOJ") also declined to produce such documents upon the Ocwen Defendants' requests (Dkt. #9 at p. 5).

The Court entered Protective Orders in *Fisher* to help facilitate discovery and prevent the improper disclosure of confidential information (4:12-CV-461, Dkt. #307; 4:12-CV-543, Dkt. #447). The Protective Orders prohibited the disclosure of confidential information "to anyone for any purpose other than matters arising from the litigation" of each *Fisher* action, as provided in each order (4:12-CV-461, Dkt. #307 at p. 4, ¶ 4; 4:12-CV-543, Dkt. #447 at p. 4, ¶ 4). Following the termination of *Fisher*, the Protective Orders required a party's counsel to destroy or return protected confidential information that the counsel had received (4:12-CV-461, Dkt. #307 ¶ 15; 4:12-CV-543, Dkt. #447 ¶ 15). However, the Protective Orders allowed a party's counsel to retain their own work product, even if it refers or relates to otherwise protected confidential information (4:12-CV-461, Dkt. #307 ¶ 15; 4:12-CV-543, Dkt. #447 ¶ 15). Further, the Protective Orders provided the Court with continuing jurisdiction to enforce the Protective Orders (4:12-CV-461, Dkt. #307 ¶ 16; 4:12-CV-543, Dkt. #447 ¶ 16).

On May 31, 2023, the Court ordered in the underlying case that any party may produce Protected Information from *Fisher*, provided that the Protected Information is produced subject to

and treated in accordance with the terms of the Court's Protective Order (4:19-CV-524, Dkt. #84; 4:19-CV-524, Dkt. #90).

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv).

The moving party has the burden of proof "to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004) (quoting *Williams v. City of Dallas,* 178 F.R.D. 103, 109 (N.D. Tex. 1998) (internal citations omitted)). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case.'" *Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 407 (D.C. Cir. 1984)).

To determine whether compliance with a subpoena creates an undue burden, the Court considers the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818 (citing *Williams*, 178 F.R.D. at 109). Additionally, the Court "may find that a subpoena presents an undue burden when the subpoena is facially

overbroad." *Id.* (citing *Williams*, 178 F.R.D. at 109). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*; *see also* FED. R. CIV. P. 45(c)(2)(B). However, despite these considerations, "modification of a subpoena is [generally] preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

A party or any person from whom discovery is sought may move for a protective order. FED. R. CIV. P. 26(c)(1). Under Rule 26, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The burden is on the party seeking the protective order "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation marks and citation omitted). Therefore, a protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Laundry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## ANALYSIS

Boyd moves the Court to quash the subpoena at issue arguing, among other grounds, that it improperly seeks information protected by various forms of privilege, violates public policy concerning *qui tam* litigation, requests documents that were filed under seal, and is unduly

burdensome, harassing, expensive, and overbroad. Boyd also moves the Court to enter a protective order protecting Boyd from the alleged abusive discovery. In the alternative, Boyd asks the Court to shift all costs of production to the Ocwen Defendants and grant Boyd at least six months to produce the requested documents.

The Court will first address Boyd's overarching challenges to the subpoena. The Court will then address the subpoena's specific requests and their associated objections. Lastly, the Court will address whether a protective order is warranted and whether Boyd is likely to incur significant expense from complying with the subpoena in light of Boyd's undue expense objection.

## I. Overarching Challenges to the Rule 45 Subpoena

Boyd's contention that the subpoena is unduly burdensome because it violates principles outlined in *Dondi Properties Corporation v. Commerce Savings and Loan Association* is unconvincing. 121 F.R.D. 284 (N.D. Tex. 1988). Among other rules governing the ethical and professional conduct of practicing lawyers, the Court's local rules prohibits the use of discovery as a means of harassing opposing counsel or counsel's client. *See* Local Rule AT–3(h). There is no evidence that the Ocwen Defendants issued the subpoena to Boyd for the purpose of harassment or undue delay. Boyd's motion to quash on such grounds operates on the evidently false premise that the Ocwen Defendants already possess the documents sought by the subpoena (Dkt. #1 at p. 6). The Ocwen Defendants deny that premise, claiming instead that they are seeking "to fill in the gaps in the *Fisher* file that [they have] not been able to obtain from other sources" (Dkt. #6, Exhibit 2 at p. 4). Therefore, Boyd's motion to quash should be denied on the grounds of undue delay or harassment.

The Court finds Boyd's proportionality objections unconvincing. Indeed, Rule 26 requires the Court to limit discovery if it determines that: "(i) the discovery sought is unreasonably

7

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C). Boyd's objections under these rules, which are briefed in a conclusory manner, also appear to erroneously assume that the Ocwen Defendants seek duplicative discovery (Dkt. #1 at p. 9). To the extent Boyd objects that the Ocwen Defendants had ample opportunity to obtain the information during the past *Fisher* litigation, the Court finds such objection baseless given the language in Rule 26. Rule 26 clearly contemplates squandered opportunities to obtain information by *discovery* in the present action, rather than limiting a party who had an opportunity to obtain information by any means before the current litigation even began. *See* FED. R. CIV. P. 26(b)(2)(C)(ii). To the extent Boyd's motion to quash is based on such proportionality objections, it should be denied.

Boyd argues that public policy "compels that *qui tam* litigation not be chilled by the sweeping effects of tactics such as this" (Dkt. #1 at p. 10). Essentially, Body argues that public policy should bar overreaching non-party subpoenas on attorneys because they hinder the effective legal representation of relators in *qui tam* actions and impose a form of sanctions (*see* Dkt. #1 at pp. 10–11). Boyd draws a comparison to how, in certain circumstances, public policy bars the enforcement of release and indemnification clauses signed by relators when it would encourage individuals guilty of defrauding the Government to insulate themselves from the False Claims Act with such clauses. *See United States ex rel. Longhi v. United States*, 575 F.3d 458, 473–75 (5th Cir. 2009). The Court appreciates the creative effort behind such an argument but ultimately finds it unavailing. Boyd's appeal to public policy is unnecessary and misplaced. There are protective

mechanisms already in place, in both Rule 45 and applicable caselaw, that address Boyd's concerns surrounding an overbroad non-party subpoena. Moreover, Boyd has taken a traditional common-law principle of contracts out of context and erroneously applies it to a discovery setting. *See Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by the enforcement of the agreement."). Boyd offers no authority showing that a party's attorney is intrinsically immune to a Rule 45 subpoena. Therefore, Boyd's motion to quash should be denied on the issue of public policy.

Boyd further argues that the instructions in the non-party subpoena improperly impose requirements from Rule 34 (Dkt. #1 at p. 12). In other words, Boyd complains that the subpoena imposes requirements beyond what Rule 45 requires. Rule 45 expressly outlines the duties that a non-party must follow in responding to a subpoena. *See* FED. R. CIV. P. 45(e). The subpoena's instructions do appear to furnish some obligations not specifically enumerated in Rule 45 (*see* Dkt. #1, Exhibit 1 at pp. 8–9). *See* FED. R. CIV. P. 45(e). Therefore, the Court finds that to the extent the subpoena's instructions require action beyond the scope of what Rule 45 requires, such instructions should be quashed.

II.     **The Rule 45 Subpoena's Specific Requests**

The first two requests in the subpoena seek specific copies of pleadings that were filed under seal in *Fisher* (Dkt. #1, Exhibit 1 at p. 9). Both requests identify the pleadings by their respective docket entry numbers from *Fisher*. Boyd argues that these pleadings are not discoverable because they consist of documents shown to the Government by the *Fisher* relators and, thus, are protected by the common interest privilege (Dkt. #1 at pp. 11–12).

"Despite its name, the common interest privilege is neither common nor a privilege." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003). Rather, it is an extension of the attorney client privilege and the work product privilege. *Id.* Nevertheless, the Court cannot properly assess the merits of Boyd's privilege claims because Boyd has not yet provided a privilege log. *See EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) ("[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[] the merits of' the privilege claim"). Even a non-party must produce a privilege log when claiming that subpoenaed information is privileged. *See* FED. R. CIV. P. 45(e)(2) (requiring a non-party who withholds subpoenaed information under a claim that it is privileged to "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim"); *Am. Fed.'n of Musicians*, 313 F.R.D. at 46 ("Rule 45(e)(2) governs a non-party's withholding of information on the grounds of privilege or work-product protections but is substantively identical to Rule 26(b)(5)'s requirements as to a responding party.").

Presently, Boyd's privilege claims are no better than boiler-plate objections lacking specificity and explanation and do not provide sufficient information enabling the parties to assess them. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n.16 (5th Cir. 1999) ("Blanket claims of privilege are disfavored."); *United States v. Cabelka*, No. 7:18-CV-00174-O-BP, 2022 WL 2612411, at *1 (N.D. Tex. Jan. 25, 2022) ("If a party seeks to quash a subpoena because it seeks information protected by the attorney-client privilege, that party has the burden to show the privilege applies

with 'particular and specific demonstration[s] of fact.'") (citation omitted). Therefore, Boyd must produce a privilege log as described in the rules.

Boyd also objects that the sought pleadings were filed under seal in *Fisher* and that "Boyd is not at liberty to violate the seal" (Dkt. #1 at p. 14). The Ocwen Defendants argue in response that Boyd's objections are baseless because the Court's May 31, 2023 Order (4:19-CV-524, Dkt. #90) purportedly allows the parties to "file and use the sealed materials from *Fisher* under the protective order in this case" (Dkt. #6 at p. 12). The parties' arguments ignore the important reality that different legal standards govern protective orders and sealing orders. *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022). As the Fifth Circuit has previously explained:

> Protective orders require a finding of "good cause" by the district court and apply to documents produced in discovery. [*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (quoting FED. R. CIV. P. 26(c)(1))]. "At the *discovery* stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper." *Id.* at 420. "But at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." *Id.* Sealing judicial records and blocking public access require a "stricter balancing test." *Id.* at 419. To decide whether something should be sealed, the court must undertake a "'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure.'" *Id.* (quoting [*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019); *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 225 (5th Cir. 2020)]). "Under both standards, the working presumption is that judicial records should not be sealed." *Le*, 990 F.3d at 419. "[C]ourts should be ungenerous with their discretion to seal judicial records . . . ." *Id.* at 418. And, to the extent that any sealing is necessary, it must be "congruent to the need." *Id.* at 420.

*Id.* The Ocwen Defendants misconstrue the Court's previous Order. The Court did not order that *sealed materials* from *Fisher* may be produced. Instead, the Court ordered that any party may produce "*Protected Information*" from *Fisher* (4:19-CV-524, Dkt. #90).

Despite this misunderstanding, Boyd does not offer any authority showing that it is prohibited from producing the sealed pleadings in response to the subpoena. Boyd's objections are conclusory and offer no substantive analysis. On the contrary, Boyd implies that the Ocwen Defendants previously had access to the sealed documents, further undercutting Boyd's position that it is somehow prohibited from producing them now (Dkt. #7 at p. 7). If Boyd believes that a Protective Order or some other authority prohibits Boyd from disclosing this information, Boyd may file a subsequent motion to quash identifying said authority and explaining the issues in detail. As it stands, Boyd's motion to quash on the first two requests does not pass muster. Therefore, the motion should be denied as to those requests.

As to request no. 3 in the subpoena, the Court finds that Boyd's motion to quash should be denied as moot because the Ocwen Defendants have already received copies of the *Fisher* relators' trial exhibits and no longer seek their production (Dkt. #9 at p. 3).

Request no. 4 seeks "[c]opies all deposition transcripts, with exhibits, for any witnesses who were not Ocwen employees" that were taken in *Fisher* (Dkt. #1, Exhibit 1 at p. 9). Notably, the Ocwen Defendants have narrowed this request by identifying responsive documents they have already received from F&R (Dkt. #9 at p. 3, Exhibit 1 at p. 4, ¶¶ 14–15). The Court does not find the request unduly burdensome. Thus, Boyd's motion to quash as to request no. 4 should be denied.

Request no. 5 seeks "[c]opies of all the *Fisher* Relators' expert reports, including any expert witness working files," from *Fisher* (Dkt. #1, Exhibit 1 at p. 10). To the extent such request seeks non-privileged information, the Court does not find the request unduly burdensome. However, Boyd must produce a privilege log in accordance with Rule 45(e)(2) if Boyd believes responsive

information is protected by various forms of privilege. *See* FED. R. CIV. P. 45(e)(2). Boyd's privilege claims asserted here, like the others before it, lack sufficient information to allow the Court or the parties to assess them. Accordingly, Boyd's motion to quash should be denied as to request no. 5.

Request no. 6 seeks "[a]ll pleadings, demands, and communications among *Fisher* Relators Counsel relating to their various lawsuits, arbitrations, and disputes regarding the amount and allocation of attorneys' fees among counsel in *Fisher*" (Dkt. #1, Exhibit 1 at p. 10). Boyd's first objects to this request arguing that it seeks documents that were filed under seal. However, like the subpoena's first two requests, if Boyd believes that a Protective Order or some other authority prohibits Boyd from disclosing responsive information to the Ocwen Defendants, Boyd may file a subsequent motion to quash identifying said authority and explaining such issues in detail. As of now, Boyd's objection is insufficient.

Boyd also objects that request no. 6 seeks information not relevant to the issues in this case. The Ocwen Defendants argue in response that the sought communications are relevant to their defenses in this case "based on the *Fisher* settlement and dismissal with prejudice" (Dkt. #6 at p. 14). The Ocwen Defendants argue that the communications may lead to the discovery of admissible evidence or shed light on what contributions the *Fisher* relators made to the Government.

When determining if a subpoena is relevant, courts apply the relevancy standard from Rule 26(b)(1). Under Rule 26(b)(1), parties may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Because the bar for relevancy is low and includes any matter "that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," the Court

declines to quash this request on relevancy grounds. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The non-privileged communications between the *Fisher* relators' counsel may indeed lead to the discovery of information relevant to this case.

Boyd further argues that the Ocwen Defendants should be estopped from demanding documents sought by request no. 6 because they refused to negotiate statutory fees with the relators' counsel in *Fisher* (Dkt. #1 at pp. 16–17). The Ocwen Defendants respond that had they known that Boyd intended to sue them again, they would have actively participated in the discussions (Dkt. #6 at p. 15). "A court may apply judicial estoppel if '(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) the court accepted the prior position; and (3) the party did not act inadvertently.'" *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 41 (5th Cir. 2019). The Ocwen Defendants' prior refusal to negotiate fees obviously did not amount to a prior legal position or a claim in the technical sense required for judicial estoppel. *See Reed v. City of Arlington*, 650 F.3d 571, 573 (5th Cir. 2011) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."). And, in the interest of striking a just and fair balance in the discovery process, the Court does not believe that it would be appropriate to preclude the Ocwen Defendants from seeking relevant, non-privileged discovery for past failings that occurred outside the lifespan of this case.

Boyd lastly objects to request no. 6 on the basis of various forms of privilege. If Boyd believes any responsive information is privileged, Boyd must produce a privilege log in accordance with Rule 45(e)(2). *See* FED. R. CIV. P. 45(e)(2). Boyd's privilege claims currently lack sufficient

information to allow the Court or the parties to assess them. For all the above reasons, Boyd's motion to quash should be denied as to request no. 6.

The Court finds that request no. 7 in the subpoena is unduly burdensome because it is facially overbroad. *See Wiwa*, 392 F.3d at 818. "Courts have found that a subpoena for documents from a non-party is facially overboard where the subpoena's document requests 'seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date'; '[t]he requests are not particularized'; and '[t]he period covered by the requests is unlimited.'" *Am. Fed'n of Musicians of the U.S. & Can. V. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015) (citing *Wiwa*, 392 F.3d at 818); *In re O'Hare*, No. MISC. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012); *Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013). Request no. 7 seeks "copies of each document that was produced by one or more of the parties in *Fisher* and *Fisher-Homeward*, to the extent that you are still in possession of those documents" (Dkt. #1, Exhibit 1 at p. 10). This request, postured as a catch-all to obtain relevant discovery (Dkt. #6 at p. 15), is not particularized to the underlying case and "not limited by any reasonable restriction[s] on time." *See Turnbow*, 2013 WL 1632795, at *1.

The Ocwen Defendants suggest that recreation of the entire *Fisher* file is necessary to properly defend this suit—e.g., to assess materiality under *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016)—but their request, as written, is not narrowly tailored to discover relevant information (*see* Dkt. #6 at pp. 4, 10–11, 17; Dkt. #8 at pp. 5–6). The request appears to cast a wide, indefinite net into the universe of discovery in *Fisher*, limited only by whether Boyd possesses such information. The Ocwen Defendants even state that a future

conference between the parties is warranted to further discuss the scope of such request, which seemingly concedes its indeterminate nature (Dkt. #6 at p. 15). Accordingly, Boyd's motion to quash should be granted as to request no. 7.[2]

The Court also finds that request no. 8 is facially overbroad. Request no. 8 seeks "[a]ll communications with Relators prior to the Retention Date" regardless of whether those communications relate to the current *qui tam* litigation (Dkt. #1, Exhibit 1 at p. 10). The onus is on the Ocwen Defendants to limit their subpoena's requests to the suit's relevant subject matter and to a specific time period. *See Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *2 (E.D. Tex. Nov. 9, 2020) (Mazzant, J.). The Ocwen Defendants did not do so here. The request is not particularized to this suit and could "likely ensnare scores of communications unrelated to this [*qui tam*] dispute." *Id.* (citing *Am. Fed.'n of Musicians*, 313 F.R.D. at 45). Therefore, Boyd's motion to quash should be granted as to request no. 8.

The Court finds further that Boyd's motion to quash should be granted as to request no. 9, which seeks "Relators' Engagement Letters" (Dkt. #1, Exhibit 1 at p. 10). "[Federal Rule of Civil Procedure] 45 subpoenas are not meant to circumvent the regular discovery process under [Federal Rules of Civil Procedure] 34 and 26." *United States v. Cabelka*, No. 7:16–CV–00126, 2017 WL 11814622, at *2 (N.D. Tex. Oct. 5, 2017) (citing *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, No. L–09–114, 2011 WL 13135608, at *2 (S.D. Tex. June 29, 2011)). "'[I]f documents are available from a party, it has been thought preferrable to have them obtained pursuant to [Federal

---

[2] The Court believes that quashing request no. 7 in the subpoena also disposes of the parties' dispute over the Ocwen Defendants' purported request for Boyd to reproduce the information it provided in response to SIGTARP's subpoenas (Dkt. #8 at p. 6). Aside from request no. 7, which is not particularized to what Boyd provided SIGTARP but seemingly encompasses that subject matter, the remaining requests in the subpoena do not specifically seek such information. Further, it does not appear that the Ocwen Defendants ever subpoenaed Boyd in his capacity as a non-party for such information, and "[i]n the case of discovery from a nonparty, a subpoena duces tecum must be served." *Kendrick v. Heckler*, 778 F.2d 253, 257 n.7 (5th Cir. 1985).

Rule of Civil Procedure] 34 rather than subpoenaing them' pursuant to [Federal Rule of Civil Procedure] 45." *Thomas v. EIM, Inc.*, No. 06-886-B-M2, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (quoting *Burns v. Bank of Am.*, No. 03 Civ. 1685, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007)). "At least one district court has specifically held 'where the sought-after documents are within the possession, custody, or control of a party, it is not appropriate to employ Rule 45 to secure such documents from a [non-party] attorney who may also be in possession of the documents or copies.'" *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, No. CV L-09-114, 2011 WL 13135608, at *2 (S.D. Tex. June 28, 2011) (citing *Suntrust Mortgage, Inc. v. Busby*, 2009 WL 5511215, at *2 (W.D.N.C. Dec 18, 2009)).

The Ocwen Defendants indicate that the Relators did not produce any *Fisher*-related documents with their Rule 26 initial disclosures (Dkt. #8 at p. 4). The Ocwen Defendants have not shown here, however, that they attempted to obtain the engagement letters which relate to this suit by first serving Rule 34 requests for production on the Relators themselves. Thus, the Court does not believe, at this juncture, that the non-party subpoena is necessary to obtain such information. *See id.*; *see also Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492 (E.D. Cal. 2012) ("In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests.").

### III. Whether a Protective Order is Necessary and Potential Cost-Shifting

Given that the Court has found that Boyd's motion to quash should be partly granted on the overreaching portions of the subpoena, the Court does not believe that a protective order is necessary to protect Boyd or its clients from annoyance, embarrassment, oppression, or undue burden or expense. Boyd has failed to meet its burden otherwise showing "the necessity of its

17

issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d at 306 (internal quotation marks and citation omitted). Therefore, Boyd's motion for a protective order is denied.

Boyd also objects that the subpoena is unduly expensive and asks the Court to shift the costs of compliance to the Ocwen Defendants (Dkt. #1 at pp. 9, 13). In a nutshell, the Ocwen Defendants respond that there is no basis for shifting costs under these circumstances and that Boyd should be partially responsible for paying for the costs of reproducing the *Fisher* record (*see* Dkt. #6 at p. 17). The Court disagrees that no basis exists to shift costs to the extent that the Ocwen Defendants meant no such mechanism exists at all. Rule 45(d)(2)(B)(ii) requires that when the Court orders the nonparty to comply with a subpoena despite timely objections, "the order must protect" the nonparty "from significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B)(ii). In the Fifth Circuit, this rule "requires a district court to shift a nonparty's cost of complying with a subpoena if those costs are significant." *Leonard v. Martin*, 38 F.4th 481, 490 n.8 (5th Cir. 2022). The cost of complying with a subpoena may be significant at values as low as $20,000 or $9,000. *See id.* (citing *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) & *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).

The Court, at this stage, however, cannot discern whether Boyd's compliance with the subpoena will result in significant expense. Boyd's undue expense objection appears to hinge on request no. 7 in the subpoena, which the Court found should be quashed as overbroad. Indeed, Boyd's declaration suggests that significant expense would have come from reproducing the *Fisher* discovery production in its entirety (*see* Dkt. #1, Exhibit 1 at pp. 13–14). But it is unclear how

expensive Boyd's compliance with the remaining requests will be. Thus, the Court finds that to shift costs now would be premature because such costs could potentially be insignificant.[3]

## CONCLUSION

It is therefore **ORDERED** that Samuel L. Boyd and Boyd & Associates' Motion to Quash, Motion for Protective Order, and Objections to Subpoena (Dkt. #1) is hereby **GRANTED in part** and **DENIED in part**. The subpoena issued to Samuel L. Boyd and Boyd & Associates is **QUASHED without prejudice** as to requests no. 7, 8, and 9 and as to its instructions that exceed the scope of FED. R. CIV. P. 45(e).

It is further **ORDERED** that Samuel L. Boyd and Boyd & Associates shall produce to Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC, privilege logs as discussed above no later than fourteen (14) days from the issuance of this Order.

**IT IS SO ORDERED**.

SIGNED this 10th day of June, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that the Ocwen Defendants have not filed a motion compelling production as to the non-party subpoena in question. Local Rule CV-7 requires that each pleading, motion, or response to a motion be filed as a separate document, except for motions for alternative relief (e.g., a motion to dismiss or, alternatively, to transfer).